Case number 10-3501, Thomas R. Long v. Board of Education, Burbank Good morning, Your Honor. Good morning. Yusra Goma for Plaintiff Appellant Dr. Thomas Long. Okay, and what is your time limit? Ten minutes and then five minutes for rebuttal. Thank you very much. Thank you very much, Counselor. Yes, ma'am. Kimberly Jansen on behalf of the Board of Education. I won't need more than 15 minutes. Thank you very much. And for my sake, I ask that you keep your voices up. Sure. Thank you. Does this work? Yes. Okay. Would you like me to begin? Yes, please. Okay. Good morning. At issue today is whether the circuit court below had jurisdiction to review the school board's decision to terminate Plaintiff Appellant Dr. Long, as well as whether the school board that presided over Dr. Long's hearing posed an unreasonable risk of bias when they terminated when they conducted his due process hearing. And third, whether the reasons given for Dr. Long's termination were against the manifest weight of the evidence. Just to give you some background, starting in 2004, Dr. Long was a superintendent of the Burbank School District on a five-year contract. During most of his employment, Dr. Long was not reprimanded and was given positive performance evaluation. In fact, his contract was renewed multiple times from 2004 to 2009. Was he a superintendent all this time, or did he have other positions? He was a superintendent during this time. He started there as superintendent? He didn't. Before 2004, he was working. He had other positions. But in 2004, he was a superintendent. Okay. Right. Because he started working in 1996. Sure. Yes. Exactly. Right. In 2009, Dr. Long announced that he intended on retiring early, which would actually cause the district to have to buy out the rest of his employment. On August 13, 2009, the board issued Dr. Long a series of several written reprimands. And six days later, the board then recommended Dr. Long's – six days later, the board suspended Dr. Long for the various charges and findings that he was issued a week before, and for various charges and findings that they had made. And the board then recommended his termination, and he was afforded a due process hearing. At first, whether the circuit court had jurisdiction to review the administrative decision to terminate plaintiff's employment, defendant argues that because Dr. Long could not appeal his decision through the administrative review law, he could not appeal his decision through the writ of certiorari. Basically, defendant argues that the plaintiff superintendent had no recourse for terminations that violated his employment contract. As noted by the Supreme Court of Illinois, certiorari review was developed in order to provide a means to review a quasi-judicial decision when an employee or petitioner had no avenue for direct review or appeal. The court in Winston did not recognize a right to certiorari review in a very specific instance when the administrative review law didn't provide a means to review an administrative decision. In this case, Dr. Long actually waived several rights under the administrative review law, including the right to the administrative review law right to his – to review his termination. Thus, in light of the purpose of certiorari review, since Dr. Long wouldn't have an avenue of appeal through the administrative review law, we're arguing he should have a means of review through the writ of certiorari. And – So you're acknowledging that he waived his rights under the school code to administrative review. You're acknowledging that? Yes, we're – yes. And your position is he has a right to review under a writ of certiorari. Exactly. We argue that the defendant, a plea in this case, ignores that as according to the Illinois Supreme Court, there is a presumption that administrative judiciary review – I'm sorry, that administrative judiciary decisions are reviewable. So what's your best authority for a review of the administrative decision under a writ of certiorari? What case would you suggest that we look at? In Arroyo v. Chicago Transit Authority, as well as Bono v. Chicago Transit Authority, those courts provide that one important factor to consider when determining whether a legislature intended to leave an administrative decision to the complete unreviewable discretion of an agency is whether the statute is drawn so that there's no meaningful standard against which to judge the agency's exercise of discretion. So as an example, if an agency retains absolute discretion and can make subjective decisions to terminate, it's not appropriate to provide for certiorari review because a judge would simply be unable to review that decision. Here, the statute governing Dr. Long's employment states that his employment will be specifically governed by his contract. Dr. Long's contract explicitly provides certain objective, not subjective standards that the agency must exercise in making his termination decision, in terminating him. And as examples, his contract specifically states he must be terminated for cause. He could only be terminated for moral turpitude or egregious conduct. Defendant does not argue that the board had retained absolute discretion over superintendent's dismissal for cause. The defendant cites to no explicit statutory prohibition of the right to general review or waiver of certiorari review. What we argue is that if this court finds that certiorari review was unavailable to Dr. Long, there would be no way to ensure that the board was ever applying these objective and very specific standards. The second thing that we brought up in our brief is that the district violated Dr. Long's due process right because the school board that presided over Dr. Long's administrative hearing was not capable of judging him fairly, as would be required by due process. Although there is a presumption that administrative officials are capable of judging an employee's termination hearing fairly, Dr. Long can overcome this presumption if he shows that there was an unreasonable risk of bias, and particularly if the officers adjudged the facts prior to affording the employee a due process hearing. The first thing I'd like to bring up is that first, the same board that presided over Dr. Long's hearing not only recommended his termination, but suspended him after investigating and finding that he was guilty of certain conduct, or guilty, for lack of a better word, of certain conduct. Prior to the hearing, the president of the board went to the media, announced through a newspaper that the board made a decision to find Dr. Long guilty of certain conduct, and that this decision was carefully made and carefully investigated and thought out. Aside from this, during the hearing itself, the board members made specific comments that showed that they had prejudged the case. As an example, before Dr. Long was able to refute all the charges that were made against him, a board member stated, it's my opinion that the rest of the charges are going to be answered in the same manner, that it's not true and it didn't happen. It should not make a difference whether we finish it or not. And that's after he had requested a continuance. Around the same time, a board member also remarked that Dr. Long could conclude the hearing right then and there, since the board probably already met the requirements for affording him due process. This due process hearing was not supposed to be a mere gesture. It was clear that the board considered it a gesture and had already made the decision to terminate him, Dr. Long, before he was able to rebut all the charges that were made against him. Another factor that would indicate bias is that the board members were personally very involved in the charges that were made against Dr. Long. The case law is clear that an adjudicator's prominent involvement in charges against an employee makes it improper for him to preside over a hearing. Improper for them to preside over a hearing, especially when the board members would have to determine their own credibility. Count two against Dr. Long involved allegations that Dr. Long improperly recorded board members. Count six involved the allegation that Dr. Long lied to the board. Count seven involved the allegation that Dr. Long refused to follow the board's orders. All of these counts involved Dr. Long's credibility as countered by the board members' credibility. And it's simply unfair for the board members to preside over such a hearing and make those credibility determinations. Really, Dr. Long could not possibly fairly refute those charges. Finally, we argue that the board's charges and findings that supposedly warranted his termination were against manifest weight of evidence. Plaintiff believes that all of the charges that were made against Dr. Long were not adequately supported by evidence. And even if they somehow could be in some instances, Dr. Long was never, not once, given a chance to remedy these charges as specifically required by his contract. In the past, Illinois courts haven't hesitated to reverse cases when the evidence in the record did not fairly support the actions of the agency. Dr. Long's contract specifically provides that he could only be terminated for egregious conduct or malpractice. In the past, Illinois courts have not hesitated to reverse cases when the evidence in the record did not fairly support the actions of the agency. I'll just bring up a few examples. First, several of the charges and findings that the board made were not supported by the testimony or evidence in the record. And two examples of this is two of the findings refer to the charge that Dr. Long personally obtained money for two different rebates. However, no evidence was presented that showed that the rebate was ever received or that Dr. Long personally received the rebate. The only document evidence that was presented was the original receipt that stated that a rebate could be obtained. Dr. Long testified that he didn't even have responsibility over obtaining rebates. Second, Dr. Long's contract again specifically provided that the board could not penalize or suspend him for a matter that they did not first bring to his attention and give him a reasonable chance to remedy. Dr. Long was suspended on August 19, 2009, and was never allowed to return to work. Dr. Long only received warnings about these charges that were made against him six days before he was suspended. Dr. Long was therefore not given an opportunity to remedy any of the charges made against him. Further, there's absolutely no evidence in the record that the charges made against Dr. Long were somehow not remediable. In its findings, the board simply made conclusory statements that each charge against Dr. Long was irremediable. The court in Yesenowski v. Board of Education provides that such conclusory statements are simply not enough, and there needs to be some indication of reasoning and record in the evidence to support that determination. Finally, many of the charges rest on Dr. Long's intentions and knowledge. Moral turpitude does not include conduct done out of ignorance or mistake. As an example, one charge was that Dr. Long improperly recorded conversations. As Dr. Long testified, he only carried a tape recorder around on his doctor's advice to assist him with a disability he had, memory loss. Dr. Long testified that he never recorded employees without their consent, and the board really didn't present evidence to the contrary. Further, if the fact Dr. Long recorded conversations or carried a tape recorder around was at all problematic, no one ever talked to him about it so that he would have a chance to remedy it. The board did not present evidence that it caused irreparable harm or that such conduct was not remediable. For the reasons set forth, we therefore ask this court to reverse and remand the administrative agency's decision. Thank you. Good morning. I will start as Appelant did with the issue of subject matter jurisdiction, of course an important issue. What's different about this case than any of the cases, frankly, cited by either of the parties, is that we have a case where the Administrative Review Act has expressly been adopted by the school code. And under the well-established case law, when the Administrative Review Act is adopted, other remedies, common law remedies, like certiorari, mandamus, etc., are abolished. Do you have a case for that proposition? Yes, sir. Winston Plaza specifically says that it supplants various common law methods of seeking review, such as certiorari, mandamus, and injunctive relief. So, in this case, if we stopped there, if there was nothing more to the statute than the adoption of the Administrative Review Act, it would be clear that there was no certiorari jurisdiction, but instead Dr. Long would have had a right to administrative review under the Act. Under Section 10-23.8 of the school code, a superintendent who accepts a multi-year contract is required to waive certain requirements. There are certain tenure rights under the Act, one of which is Section 24-16, the right to review under the Administrative Review Act. Now, I think it's significant that the legislature chose the word waives. This is not a case where the legislature determined that the Administrative Review Act does not apply to superintendents on multi-year contracts. Rather, the legislature decided that in order to enter into such a contract, a superintendent would have to waive those tenure rights, including the right to administrative review. So, waiver is a knowing and intentional act? Yes, Your Honor. The cases that the appellant cited are distinguishable in that each of the cases that she has cited is a knowing and intentional act. The cases that the appellant cited are cases in which the Administrative Review Act had not been adopted by the enabling statute. This is, of course, a different case, and it is a question of first impression for this Court. So you're maintaining we don't have jurisdiction? No jurisdiction to review the... The acts of the Administrative Review Act? Exactly. The decision. Does the act itself, the statute, bar any other methods like certiorari? The act itself does not specify that certiorari is barred. In the contract? No, nor does the contract. Only the case law that holds that when the Administrative Review Act is adopted, certiorari is abolished. With respect to the issue of due process claims, Hortonville, Gilliland, and Grissom, I think, are all really controlling here. In each of those cases, the Court recognized the importance of the school board's policymaking role. The scope of due process review must be a way to get the superintendents' right to review. The rights weighed against the interests of the legislature in providing for policymaking authority in the school board. There's no question that it's not a violation of due process for the same board to hear the suspension of Dr. Long, as well as to adjudicate the issue of his dismissal. That was the same situation as was present in the Bataglianis case, in which the Seventh Circuit pointed to the issue of due process. The Seventh Circuit pointed to, in that case, the superintendent's contractual agreement to subject these issues to review before the Board of Education. Same case here, the contract specifies that these issues will be heard by the Board of Education. That's the decision maker that plaintiff agreed to. That's what he contractually accepted as the method of review. Did the plaintiff say that if there were some problems with him, that he would have time to cure them, that they would allow him time to cure the problems? If they did say that, did they give him time to cure problems when some of these issues extended over a couple of years? So, why didn't they say something to him a while back? I can't say why I don't know what was going on a while back, but what I do know is that the contract provides for dismissal, not just for irremediable causes, but also for causes that are egregious and show moral turpitude. And for a number of these counts, for a number of these charges, the school board found that the conduct was egregious. Where the conduct is egregious, remediability doesn't come into question. Counsel referred to a statement by one of the board members at the hearing, saying that it wouldn't make a difference if we continued with the hearing. It's just going to go the same way it has. I think to draw a conclusion from that one statement, that this entire board was biased and prejudiced against Dr. Long, is a bit of a stretch. Right in context, and your honors will, as you go through the record, see that this was an extensive 16 hours total hearing process. At the time that comment was made, there had been seven or eight hours of Dr. Long testifying before the board. In a relatively slow process where his counsel would simply read the entire charge and then allow Dr. Long to respond and provide his view. The comment probably does reflect a little bit of impatience with the speed of the proceeding, but it doesn't indicate a bias that would violate due process. Can you tell me if this could possibly, possibly be a case where prior board members didn't have a problem with Dr. Long, but newer board members did? I believe that is the case. I don't know that the record reflects it, but my understanding is that this was a new board, shortly after this new board came on, that the decision to dismiss Dr. Long occurred. And again, as Hortonville, Gilliland, and Grissom all point out, that's the point of electing the Board of Education. That's the point of giving them the policymaking authority. And then, shortly after Dr. Long, they elect a new board, and the board does what it thinks the public wants it to do. And dismissing a superintendent is certainly part of the policymaking role of the Board of Education. To the extent that plaintiff also argues that the board was biased because it was intricately involved with the charges, I think that's also different. She relies on the Benko case, where there was a lot of actual interaction with the board. There was a lot of interaction between one board member and the plaintiff. It was a chief of police who had previously supervised the plaintiff and had imposed one type of light duty restriction on him. And then at the board, where they were deciding whether or not light duty was appropriate, made comments to that effect. This is a completely different story. To the extent the board has any involvement in the charges, it's in a purely official capacity. There's no personal issue that these board members are facing. And in fact, on the question of lying to the board, Dr. Long admitted that he lied about his laptop being in his car trunk, and he said it was at his house. He admitted, in terms of the failure to follow directives, that he didn't comply with the directives to submit boundaries by January and IT credentials. In both of those cases, he pointed to underlings as responsible for those failures, but he didn't deny that he had, in fact, failed to comply with those issues. In terms of the manifest weight of the evidence, it's a lengthy record, and I don't think it's going to be long. Unless the court has specific questions, it serves any purpose for me to detail them orally here. The briefs point out the extensive evidence in support of each of these charges. You know, you could probably uphold the manifest weight issue solely on the testimony of Sharon Wild, the assistant who was suffering from cancer, who just went through all sorts of egregious, the pellet gun incident, the mob shooting incident, the murder of a child. The fact that she was locked up for her wig and short hair after chemotherapy, the bungee cord thing, threats to sue her and take everything she owns. As you go through the record, you will see that the evidence more than adequately supports the board's findings. And of course, this court is not re-weighing the evidence. All this court is looking for is whether there is evidence viewed in the light most favorable to the board to support its decision. If the court has no other questions, we would ask that you affirm. Let's get back to jurisdiction for a minute. Administrative review law applies pursuant to statute. Yes. And he signed a multi-year contract. Correct. And by doing so, did he waive the administrative review law? He did. That isn't completely out in the cold. He cannot go to court to review it. That is correct. And the legislature in drafting that provision for waiver could have stopped at 2415. It did not have to include the administrative review provision in requiring the superintendent to waive county rights. It chose to do so. And the courts have recognized that certiorari review is really functionally the same thing as review under the administrative review law. There is not a substantive difference between the two types of review. So it wouldn't make sense for the legislature to provide specifically for the waiver of review under the administrative review law, if only to replace it with review under certiorari. That would be a meaningless waiver. And you are saying that by him waiving the administrative review law bars him from using the common law? Correct. The statute provided the administrative review law as the remedy and he waived it. If there are no further questions. Thank you. On the issue of certiorari review, we would just like to emphasize that there was a waiver of a bundle of administrative review law rights. There was nothing specific about certiorari review or about there was no explicit provision completely. There was no explicit provision waiving certiorari review or any type of review. The purpose of certiorari review is to provide review in quasi-judicial decisions when there is no means of review. And that's exactly what we have here. And really his contract, Dr. Long's contract would be unenforceable if there was no means of review or appeal. Also on the issue of bias, our case is very similar to Danko as well as many cases that were cited in our brief. Not only did many of the charges directly have to do with the board members, but the charges involved, some of the charges involved comments that Dr. Long supposedly made about the board members themselves, negative comments about the board members. As well as the board members' wives. So it really was very personal. And I would like to reiterate that there are various things that make the board's presiding over the hearing biased. The comments made in the hearing were not the only evidence that we had. And we'd ask that you look at the brief and we do provide various factors that we didn't bring up today. Thank you. Let me thank you for excellent arguments, excellent briefs, and we will take this matter under review.